# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **JEWEL GHAN as substitute for BUDDY GHAN, Deceased Wage Earner** | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. CIV-11-169-FHS-SPS<br>) |
| **MICHAEL J. ASTRUE, Commissioner of the Social Security Administration,** | )<br>)<br>)<br>) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Jewel Ghan, as substitute for deceased wage earner Buddy Ghan, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining Buddy Ghan was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born December 21, 1945, and was deceased at the time of the most recent administrative hearing. (Tr. 284, 1653). He completed the ninth grade (Tr. 291), and had worked as a truck driver and project manager (Tr. 29). The claimant alleged that he has been unable to work since July 26, 2002, due to hypercholesterolemia, hypertension, hepatitis C, surgery graft left lower extremity, ankle and heel surgery, coronary artery disease with status post-myocardial infarctions and stent placement. (Tr. 285).

**Procedural History**

On February 27, 2003, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. His application was denied. ALJ Arthur J. Schultz conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 22, 2004. (Tr. 58-63). The Appeals Council remanded the case (Tr. 131-133), and ALJ Schultz conducted a second administrative hearing and determined that the claimant was not disabled in a written decision dated August 7, 2007 (Tr. 67-73). The Appeals Council again remanded the case because the hearing transcript was inaudible, and ALJ Daniel Curran held a hearing and determined that the claimant was not disabled in a written opinion dated February 23, 2010. (Tr. 23-30). The Appeals Council then denied review, so ALJ

Curran's February 2010 opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

ALJ Curran made his decision at step four of the sequential evaluation. He found that Mr. Ghan had the residual functional capacity ("RFC") to perform the full range of medium work as defined in 20 C.F.R. § 404.1567(c), *i. e.*, he could lift/carry 25 pounds frequently and 50 pounds occasionally, sit/stand/walk six hours in an eight-hour workday, and push/pull commensurate with his lifting limitations. (Tr. 27-28). The ALJ concluded that the claimant's husband therefore could return to his past relevant work as a truck driver or project manager in the welding business. (Tr. 29).

## Review

The claimant contends that the ALJ erred by (i) failing to properly evaluate her husband's credibility, (ii) failing to properly assess his RFC, and (iii) improperly determining that he could return to his past relevant work. In support of the second contention, the claimant argues, *inter alia*, that the ALJ failed to include her husband's severe leg impairment at step four. The undersigned Magistrate Judge finds that the ALJ *did* fail to properly evaluate *all* of the severe impairments at step four, and the decision of the Commissioner should therefore be reversed.

The record reveals that the claimant, *i. e.*, Mr. Ghan, had the severe impairments of coronary artery disease, hepatitis C, chronic obstructive pulmonary disease (COPD), and status post reconstructive surgery of the left lower extremity. (Tr. 25). As relevant to this appeal, the claimant was injured in November 1999 after a drilling pipe fell on his

left leg. He sustained an open tibia fracture on his left lower extremity. (Tr. 624). On July 9, 2001, Dr. Todd C. Johnson, an orthopedic surgeon, prepared a letter addressing the claimant's functional capacity and disability. (Tr.1052-1054). He described the nature of the claimant's left tibia fracture, noted two separate surgeries, and that the claimant had been under a doctor's care ever since. Dr. Johnson also stated that the claimant had been compliant with physical therapy and followup examinations. (Tr. 1052). As to the claimant's physical limitations, Dr. Johnson referred to a Functional Capacity Evaluation that "well outlined" the claimant's physical limitations but was either not contained in the voluminous record or not clearly marked as related to Dr. Johnson's letter; however, Dr. Johnson did opine in the letter that the claimant would have problems with prolonged standing, bending, stooping, crawling, kneeling, squatting, and weight-bearing, resulting in "some permanent residual disability from this." (Tr. 1653). In summary, Dr. Johnson stated, "His leg will never be normal again. He is going to have continued problems with his leg throughout his life which will range in intensity depending on how active he is required to be and how much impact activities he has. I think he will always have problems with activities such as running, jogging, and jumping . . . [h]e should regain some strength but I do not think it will ever be normal strength, and I do not think he will ever get normal sensation." (Tr. 1054). On March 30, 2005, Dr. Kanu Patel examined the claimant pursuant to a disability evaluation. (Tr. 1195-1196). Dr. Patel stated that the claimant could not lift over 25 pounds due to shortness of breath, and the physical examination revealed "several linear surgical scars and some loss of muscle tissue," and noted that the claimant could not walk normally on his toes or

heels. (Tr. 1196). On August 21, 2002, the claimant also received a 70% disability rating from the Veteran's Administration.

In his written opinion, the ALJ summarized the claimant's medical history, but made no mention of Dr. Johnson's assessment, or Dr. Patel's assessment of the claimant's lifting ability. The ALJ further noted the VA's disability rating, but noted that it was not legally binding and afforded it little probative weight in light of medical expert testimony at the 2009 administrative hearing that the claimant's impairments did not meet a listing but that the claimant should avoid heavy lifting. (Tr. 28, 1660-1661). In his RFC assessment, the ALJ noted the claimant's past leg injury, but did not specifically address any medical evidence as to the effect of the injury. (Tr. 28). The ALJ then concluded that, "considering the medical record which is essentially negative, and all other avenues of the claimant's contentions which appear contradictory and self-serving, I find that symptomatology did not further limit the claimant's [RFC] for the full range of medium work activity on a sustained basis." (Tr. 29).

Although the ALJ found the claimant's status post reconstructive surgery of the left lower extremity to be a severe impairment, he failed to include any limitations on the claimant's use of his legs in the RFC assessment at step four. (Tr. 27-29). An explanation should be provided when, as here, an impairment found to be severe at step two is determined to be insignificant in later stages of the sequential evaluation. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should have "explained how a 'severe' impairment at step two became 'insignificant' at step five.") [unpublished opinion]; *see also Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th

Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.") [unpublished opinion]. The ALJ should have explained why the claimant's left lower extremity impairment did not call for corresponding physical limitations to his left lower extremity in the RFC, as well as why he rejected the probative evidence from Dr. Johnson as to the claimant's left leg injury and long-term prospects for recovery. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984). "An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). Additionally, "the notice of the determination or decision must contain an explanation of the weight given to the treating source's medical opinion[s]." Soc. Sec. R. 96-2p, 1996 WL 374188 at *5 (July 2, 1996).

Because the ALJ failed to explain how the claimant's severe impairment of a status post reconstructive surgery of the left lower extremity at step two became so insignificant as to require no limitations in his RFC at step four, the Commissioner's

decision should be reversed and the case remanded to the ALJ for further analysis. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled

**Conclusion**

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 7th day of September, 2012.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma